E-FILED
Tuesday, 26 May, 2020  10:57:57 AM
Clerk, U.S. District Court, ILCD

# THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No:  20-2142 |
| | ) | |
| $60,585.00 IN U.S. CURRENCY, $6,308.54 | ) | |
| IN U.S. CURRENCY, FORGIATO RIMS and | ) | |
| TIRES, and MISCELLANEOUS JEWELRY, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES the plaintiff, the United States of America, by Richard Kim,

Assistant United States Attorney, and respectfully states as follows:

### Nature of the Action

1.     This is an action *in rem* to enforce the provisions of 21 U.S.C. § 881(a)(6) for

the forfeiture of $60,585.00 in U.S. currency, $6,308.54 in U.S. currency, Forgiato rims and

tires, and miscellaneous jewelry, which constitute (1) moneys, negotiable instruments,

securities, or other things of value furnished or intended to be furnished in exchange for

a controlled substance in violation of the Controlled Substances Act (21 U.S.C. § 801, *et

seq*.); (2) proceeds traceable to such an exchange; (3) moneys, negotiable instruments, and

securities used or intended to be used to facilitate a violation of the Controlled Substances

Act; or (4) property involved in a transaction or attempted transaction in violation of 18

1

U.S.C. § 1956 (money laundering), and are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## The Defendants *In Rem*

2.      The defendants are $60,585.00 in U.S. currency, $6,308.54 in U.S. currency, Forgiato rims and tires, and miscellaneous jewelry.

3.      The defendants are currently in the custody of the United States.

## Jurisdiction and Venue

4.      This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.      Pursuant to 28 U.S.C. § 1355(b)(1)(A), this Court has *in rem* jurisdiction over the defendants and venue is proper in this district because the facts which give rise to this forfeiture occurred in Macon County, Illinois.

## Basis for Forfeiture

6.      The defendants are subject to forfeiture pursuant 21 U.S.C. § 881(a)(6) because they constitute (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act (21 U.S.C. § 801, *et seq.*); (2) proceeds traceable to such an exchange; (3) moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act; or (4) property

involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 (money laundering).

## Facts

7.     Since in or about 2016, law enforcement conducted an investigation into the drug trafficking activities of cocaine and cannabis by Courtney Tyler Johnson (Johnson) and members of his Drug Trafficking Organization (DTO) in the Decatur, Illinois area, including Marquevin Smith (Smith) a/k/a/ "Chubb" or "Chubs" and Deandri Burton (Burton).

## Confidential Sources

8.     Throughout the investigation, confidential sources identified Johnson as the main supplier of powder cocaine and marijuana in the Macon County, Illinois area. These confidential sources said that Johnson would not deal with any buyer directly and that any purchase of illegal narcotics from Johnson were made through his main re-distributors, including Smith and Burton.

9.     On December 23, 2016, a Confidential Source (CS 1) was interviewed by law enforcement regarding Johnson. CS 1 advised that Johnson was responsible for bringing multiple kilograms of cocaine and pounds of cannabis into the Macon County, Illinois area. CS 1 stated that Smith obtained approximately 10 pounds of cannabis and an unknown amount of cocaine at a time from Johnson.

10.     On January 12, 2017, another Confidential Source (CS 2) was interviewed by law enforcement, who reported that Johnson and Smith conducted drug trafficking

3

transactions face to face, and by telephone calls, text messages and Facebook. CS 2 said that he/she had a telephone number for Smith (217-329-8564), and that Johnson utilized storage sheds in Decatur, Illinois, to store the illegal drugs.

11.     CS 2 stated that Smith has traveled to Atlanta, Georgia to hang out with Johnson, and that one such trip happened 5-6 months ago. CS 2 also stated that Smith was living on West Division Street and that his girlfriend was Lori Grayned (Grayned).

12.     When questioned about Smith's drug trafficking, CS 2 advised that, at least once a month, Smith obtained from Johnson a kilogram of cocaine between $30,000 and $35,000 and 10 and 20 pounds of cannabis for $3,500. CS 2 also advised that he/she purchased cocaine in increments of 4.5 ounces for $5,000 and 9 ounces for $10,000 at a time from Smith.

13.     On January 19, 2017, CS 2 met law enforcement to further discuss Johnson and his DTO. CS 2 said that brothers, Leondis and Braxton (last name unknown), and Patrick Young purchased cocaine from Smith (later identified as Patrick Younger).

14.     On February 14, 2017, law enforcement met with a third Confidential Source (CS 3) to discuss Johnson and his DTO. CS 3 said that Johnson has sold illegal narcotics since 2001 or 2002. Twice a month, Johnson would bring 2 to 3 kilograms of cocaine and approximately 10 pounds of high grade cannabis at a time into Decatur, Illinois. Johnson would then quickly distribute the illegal narcotics to his main re-distributors, including Smith. CS 3 said Johnson would get his cocaine from California

but he/she does not know where Johnson gets his drugs from now. CS 3 believed that Johnson had females drive the illegal drugs into Decatur from unknown source locations.

15.     On March 27, 2017, a fourth Confidential Source (CS 4) was interviewed by law enforcement. CS 4 reported that he/she had purchased cocaine from Johnson for about four years, but that they had a falling out because he/she never paid Johnson for cannabis that was fronted to him/her. When questioned about Smith, CS 4 reported that Smith purchased large quantities of cocaine from Johnson, which typically was a kilogram each time. CS 4 was sold both cocaine and cannabis from Smith.

16.     On March 8, 2018, CS 1 was interviewed by law enforcement about Johnson's drug trafficking.   CS 1 said that Johnson stopped dealing illegal drugs with most people after he (Johnson) had been kidnapped, and that Johnson would only deal with Smith and Burton. Johnson said that if someone wanted to purchase cocaine, cannabis or ecstasy, it would only be from Smith or Burton.

### Home Invasion

17.     On May 2, 2016, law enforcement was called to a home invasion at the residence of Grayned at 2372 E. Main Street, Decatur, Illinois. Grayned said that two unknown, armed black males kicked open her front door and fired guns at her two dogs and then at her. Once Grayned fired back at the two unknown black males with a revolver, the two males left her residence. At that time, $15,310.00 was seized by law enforcement from Grayned's residence. Both Smith and Grayned were interviewed and admitted that neither of them had a legitimate job or source of income.

## Use of Storage Facilities to Traffic Illegal Narcotics

18.     The investigation revealed that Johnson utilized storage lockers to store illegal narcotics, and that Johnson's grandmother had storage units rented in her name in Decatur and Springfield, Illinois for Johnson.

19.     On February 20, 2017, surveillance revealed that Johnson entered a gated, storage facility known as Northwest Mini-Storage, located at 2330 Route 121, NW, in Decatur, Illinois.

20.     On February 21, 2017, documents from Northwest Mini-Storage showed that storage unit F19 ("Unit F19") was rented by Johnson's grandmother. Records indicated that access into and out of the facility was monitored through an access code individual to each renter. The access code assigned to Johnson's grandmother was used the same day and at the approximate time that law enforcement saw Johnson enter the storage facility on February 20, 2017.

21.     Northwest Mini-Storage records indicated the access code assigned to Unit F19 was used for entry 24 times from August 19, 2016 through December 24, 2016; 12 times from January 6, 2017 through February 20, 2017; and 13 times between September 28, 2017 and November 9, 2017.

22.     On March 2, 2017, a pole camera was installed by law enforcement to capture activity outside of Unit F19. Between September 28, 2017, and November 9, 2017, the pole camera video showed Johnson at Unit F19 on 13 occasions. The visits ranged in time from 3 to 15 minutes with multiple visits on the same day.

23.     The pole camera video from February 5, 2018, through July 25, 2018, revealed 20 visits to Unit F19 by Johnson. On both May 5, 2018 and July 17, 2018, Johnson visited Unit F19 twice in the same day. On three occasions (March 12, 2018, May 22, 2018 and July 17, 2018), Johnson opened up Unit F19 while a quad-cab pickup with a large trailer pulled up and stopped outside of Unit F19. The visit on March 12, 2018, lasted about 5 minutes, the visit on May 22, 2018, lasted about 4 minutes, and the visit on July 17, 2018, lasted less than 2 minutes.

24.     The pole camera data for 16 of 17 visits between February 5, 2018, and July 25, 2018, showed that Johnson entered and exited Unit F19 carrying items such as boxes and what appeared to be trash bags. The visits lasted 1 to 12 minutes.   Johnson was not able to enter Unit F19 on February 5, 2018, until he had a lock removed from the unit by an employee of the storage facility.

25.     On July 16, 2018 and August 16, 2019, two federal orders were authorized which allowed law enforcement to monitor and record of visual, non-verbal conduct and activities inside of Unit F19. After Johnson left Unit F19 on July 17, 2018, agents installed video surveillance equipment inside Unit F19.

26.     Video surveillance inside Unit F19 revealed 5 visits by Johnson between July 18, 2018 and August 14, 2018, as well as 6 visits between August 17, 2018 and August 29, 2018.   On those occasions, Johnson placed/removed various packages, bins, sacks and boxes in Unit F19.

27.     Between August 30, 2018 and March 3, 2019, Johnson utilized Unit F19 on 11 occasions, as recorded by the pole camera outside and video surveillance inside of Unit F19.

28.     Pole camera footage revealed that Johnson was seen going between Unit F19 and Unit A42 at Northwest Mini-Storage on February 16, 2019 and March 6, 2019, to further the drug trafficking activities.   Records revealed that Unit A42 was registered to Burton.

### Federal Search and Seizure Warrant

29.     On August 29, 2018, a federal search and seizure warrant was obtained and executed on Unit F19 at Northwest Mini-Storage.   Law enforcement observed 12 large brown boxes containing a total of 161 vacuum-sealed clear packs of approximately 1 pound of cannabis in each. The cannabis was packed in a zip-lock type clear bag then secured again in a vacuum-sealed bag. The unopened boxes were sealed with clear packaging tape. Inside the sealed brown boxes were thick black plastic trash-type bags that were secured with a zip-tie fastener. Inside each black plastic bag were 18 clear, vacuum-sealed packs of cannabis.

30.     On July 11, 2019, agents obtained federal search warrants for some of the target residences of Johnson's DTO, which included Smith's residence at 724 W. Division Street, Decatur, Illinois (Smith's residence).   During the search of Smith's residence, agents seized $6,308 U.S. currency from several different locations, approximately 145 grams of suspected cannabis, a syringe with a white chalky substance (suspected

cocaine), a pipe with cocaine residue, a green powder (suspected marijuana), two iPads, seven cellular phones, and four Forgiato rims and tires, and a locked black Fortress brand metal safe sitting next to a bedroom closet.

31.    On August 9, 2019, a federal search warrant was executed on the black Fortress safe that was seized from Smith's residence, which contained $60,585 in U.S. currency, miscellaneous jewelry, and a broken Buick key fob, among other things.

## Vehicles

32.    Pole cameras and law enforcement surveillance revealed that Johnson and his DTO utilized several vehicles to transport/transfer marijuana, cocaine and U.S. currency and traveled to meeting locations to arrange for such transport/transfer, including a vehicle driven by Smith. Investigators identified that Smith frequently operated a silver-colored 2008 Buick Enclave SUV (license plate 265476 and registered to Guttierrez Cole) and that Johnson also drove it on occasion to further the DTO conspiracy.

33.    On October 3, 2018, between approximately 7:14 p.m. and 7:19 p.m., agents witnessed Johnson arrive in Guttierrez Cole's Buick Enclave and go inside Unit F19. After Johnson re-emerged, he placed a large brown box inside the Buick Enclave. Johnson retrieved two more boxes and also placed those inside the Enclave. After he locked the unit, Johnson drove away.

34.    At 7:22 p.m., Johnson returned to Unit F19 driving the Buick Enclave. When Johnson opened the hatch, all three boxes that he previously placed inside the Enclave

were no longer there. From Unit F19, Johnson placed three more large brown boxes and two large black trash bags into the Enclave. After Johnson closed and locked Unit F19, he drove away again.

### Smith's Residence

35.     Johnson traveled from his apartment in Clayton, Missouri, to storage units and to residences of his DTO members, including Smith's residence, to further conduct the drug trafficking conspiracy. The following events, as described below and which happened at Smith's residence, are a direct result of Smith's drug trafficking activities and/or evidence that Smith knew such drug trafficking occurred by Johnson and the DTO at his residence.

36.     On April 26, 2017, a pole camera was installed outside Smith's residence. Law enforcement saw Johnson carrying items to and from Smith's residence which matched the same appearance of cardboard boxes, trash bags and duffel bags that had been removed from the storage units. Vehicle traffic was also observed to have increased dramatically in the evenings at this location with Johnson, Smith and other members of Johnson's DTO.

37.     On June 21, 2017, police responded to the area of Smith's residence due to shots being fired. The investigation by law enforcement revealed that Smith had been shot at three times by an unidentified shooter.   Two shots were fired at the front porch and the third shot was fired at Smith's bedroom window. Smith was not home at the time of the shooting.

38.     On August 22, 2017, at 1:29 p.m., Cameo Erwin (Erwin) and another unknown black male were on the porch at Smith's residence.    The unknown black male left Smith's residence in a gray Chevy Trailblazer parked on the street (Michigan registration DNP8945 in the name of Tyler Williams-Harness) at 1:35 p.m. Periodic surveillance was conducted at Smith's residence that day which showed that at 4:59 p.m., a maroon Chevy Impala pulled up and parked behind a Dodge Challenger (Illinois registration Z125104 in the name of Keaira Tyler). Johnson exited the driver's seat of the maroon Impala and Tyler Williams-Harness and Darryl Foster exited the passenger sides of the vehicle. Tyler Williams-Harness walked to the front porch of Smith's residence, and after Johnson walked to the Challenger to retrieve one or two bags out of the trunk, he (Johnson) walked to porch.    Thereafter, Tyler Williams-Harness left Smith's residence in the Challenger, and Johnson and Foster left together in the maroon Impala.

39.     On January 22, 2018, surveillance by law enforcement showed the following between 1:49 p.m. and 9:20 p.m. at Smith's residence:

> At 1:49 p.m., Smith arrived in the Buick Enclave and backed it into the driveway. No one exited the Enclave at that time.
>
> At 2:00 p.m., a silver or gray older model Tahoe or Suburban arrived and parked in front of the residence.    A black male walked from the Tahoe or Suburban and got inside the passenger seat of the Enclave.
>
> At 2:16 p.m., the black male returned to his Tahoe/Suburban. Smith's Buick Enclave and the Tahoe/Suburban drove away from the residence at the same time.
>
> At 2:17 p.m., Johnson arrived in a silver Saturn (Illinois registration Q743867 in the name of Shannon Fisher). Smith immediately turned around

11

and stopped his Buick Enclave across from the Saturn. Approximately 10 seconds later, Smith left in the Buick Enclave but the Saturn remained parked at the residence.

At 2:44 p.m., Smith returned in the Buick Enclave. Once Johnson saw Smith arrive, he exited the Saturn and both Johnson and Smith went inside.

At 4:16 p.m., Johnson left in the Saturn but returned at 5:03 p.m. Both Johnson and an unknown female exited the Saturn and went inside the residence.

At 5:39 p.m., an unknown male arrived and parked behind the Saturn. The unknown male went inside the residence with a large duffle bag. At 5:40 p.m., the unknown male left, and it appeared to agents that he did not have the duffle bag when he got back into his minivan.

At 6:48 p.m., an unknown vehicle pulled up. Several people came out of the residence, one of which appeared to be Johnson who walked up to the passenger side of the unknown vehicle. A few minutes later, the unknown vehicle drove away. At least three of the individuals who exited the residence got into and drove away in the Buick Enclave.

At 8:32 p.m., the Buick Enclave returned and at least three individuals exited the vehicle and went inside the residence.

At approximately 9:20 p.m., it appeared that Johnson left the residence in the Saturn by himself.

40. On January 31, 2018, between 2:30 p.m. and 9:52 p.m., surveillance showed the following:

At approximately 2:03 p.m., Johnson arrived in a rented silver-colored 2017 Toyota Corolla (Florida license plate 918 KUX ).

At approximately 9:47 p.m., surveillance showed a white 2016 Chevy Impala (Illinois license plate AM74121) stop on the street in front of the residence.

12

Less than a minute later, Johnson walked up to the Chevy Impala, opened the rear driver's side door and leaned into the vehicle. Johnson then stepped away from the vehicle, closed the door and walked towards the residence.

Approximately one minute later, surveillance watched as Johnson returned to the Chevy Impala with a bag and entered the rear driver's side door.

Approximately three minutes later, Johnson exited the Chevy Impala without the bag and walked toward Smith's residence. The 2016 Chevy Impala then pulled away.[1]

41.  On February 27, 2018, surveillance at Smith's residence revealed the following between 4:33 p.m. and 8:37 p.m.:

At approximately 4:33 p.m., Johnson arrived in a rented maroon Kia (Texas registration JMY4558). Johnson exited the Kia and got into the front passenger seat of the Buick Enclave. At 5:00 p.m., both Johnson and Smith exited the Buick Enclave and went inside the residence. A short time later, Johnson and Smith exited the residence and got back in the Buick Enclave.

At 5:46 p.m., a white Buick (Illinois registration ZU20286 to Danae Smith) pulled up to the residence and parked across the street.   A male fitting the description of Erwin exited his vehicle and got into the back seat of the Buick Enclave.

At 6:25 p.m., an unknown male and female were walking on Division Street. The unknown male approached the driver's side door of the Buick Enclave and then walked away a short time later.

At 6:29 p.m., after Johnson and the two back passengers exited the Buick Enclave, Smith drove away from his residence. At that time, it appeared that Johnson walked inside the residence while one of the males stood in

---

[1] At approximately 11:10 p.m., a traffic stop was conducted on the white 2016 Chevy Impala. Law enforcement located approximately 5,000 grams (12 pounds) of cannabis that was vacuum-sealed in a bag and wrapped in two additional bags from the trunk of the vehicle. The outer bag was similar to the bag that Johnson had been carrying when he exited the Chevy Impala just prior.

front of the porch and the third male walked away and stood near a vehicle that had been parked with the lights on. A short time later, the man standing in front of the porch went inside the residence. Johnson quickly came out of the residence and then went back inside. The third male, who was standing by the vehicle with the lights on, walked inside the residence.

At 6:53 p.m., the Buick Enclave arrived and backed into the driveway out of sight from surveillance. At 8:56 p.m., the Enclave left the residence.

At 7:03 p.m., the male, who appeared to be Erwin, exited the residence and walked out of sight to where the Buick Enclave was parked in the driveway. A short time later, Erwin walked back to his white Buick and left.

At 7:06 p.m., Smith left in the Buick Enclave but then turned around and parked behind the maroon Kia.   Smith exited the Enclave and went inside his residence.

At 7:13 p.m., an unknown male exited the residence carrying a white object in his hands. The unknown male walked to the maroon Kia, placed the object on the passenger side, walked to the driver's side and drove away in the Kia.

At 7:17 p.m., after Smith exited his residence, he walked to the Enclave and leaned into the driver's door. Thereafter, Smith went back inside his residence.

At 7:25 p.m., the maroon Kia returned and parked in front of the Enclave. The unknown male exited the Kia and went inside Smith's residence.   At 7:27 p.m., two males (one possibly Johnson), exited the residence and drove away in the maroon Kia. At the same time, Smith exited the residence and left in the Enclave.

At 7:42 p.m., an unknown light colored SUV backed into Smith's driveway out of sight.   At 7:47 p.m., Smith returned to the residence and parked the Enclave in the street.   Smith went inside his residence along with an unknown person who had walked to the front of the driveway.

At 7:58 p.m., the maroon Kia returned and parked behind the Enclave. Both the driver and the passenger, who was Johnson, exited the Kia and went inside the residence.

At 8:15 p.m., after a silver colored vehicle with dealer plates (DL021BB) pulled into Smith's driveway, the unknown driver went inside the residence. Approximately three minutes later, the unknown driver left in the silver colored vehicle with dealer plates. At this time, an unknown male also exited the residence, walked to the back of the driveway and drove away in the light colored SUV.

At 8:34 p.m., an unknown male left in a Nissan (IL registration Q941093 registered to Shitierria Ford) which had just pulled up in front of the residence.

At 8:37 p.m., the silver Nissan Altima returned to the residence. Johnson exited the residence and appeared to agents that he put something in the glove compartment. Johnson went back inside the residence while the silver Altima drove away.[2]

42.     Pole camera footage outside of Smith's residence on August 10, 2018, between the hours of 12:25 p.m. and 9:54 p.m., revealed the following:

At 12:25 p.m., Johnson arrived in his Chrysler 300 and parked along the north curb. At 12:38 p.m., Johnson left the residence in his Chrysler 300 with no one entering or exiting the vehicle. At this time, the Buick Enclave was not at the residence but Smith's black Chevrolet Impala was parked on the street along the north curb in front of his house.

At 12:42 p.m., Johnson's Chrysler 300 arrived back at the residence and parked along the south curb.   A few minutes later, the Chrysler 300 drove away from the residence with no one entering or exiting the vehicle.

At 1:39 p.m., an unknown black male arrived in a black Chevrolet four door sedan and parked in front of Smith's residence. The unknown black male walked to Johnson's Chrysler 300 and sat in the front passenger seat. They remained in Johnson's Chrysler 300 until 2:03 p.m.

---

[2] A few minutes later, the Nissan Altima was pulled over for a traffic stop. The passenger in the Altima was identified as Johnson's mother, Jennifer Fisher, and the driver was Jennifer Fisher's husband, Shannon Fisher. Agents seized $23,500 in U.S. currency from the Altima's glove compartment. At that time, both individuals denied ownership of the money.

At 1:44 p.m., Smith's Buick Enclave arrived at his residence.   Johnson's Chrysler 300 pulled onto the street to allow for the Buick Enclave to back into the driveway. Smith left in the Buick Enclave a short time later and returned home at 2:03 p.m. As Smith backed the Buick Enclave into his driveway, Johnson and an unknown black male exited Johnson's Chrysler 300. The unknown black male left the residence in the Chevrolet sedan, as Johnson and Smith walked back to the porch and then went inside.

At 2:55 p.m., Smith and Johnson exited the residence and walked back to the Buick Enclave. Smith and Johnson drove away from the residence together (Smith was the driver and Johnson was the passenger).

At 5:12 p.m., Smith and Johnson returned to the residence in the Buick Enclave, parked along the north curb and exited the vehicle, along with a third unknown black male from the rear passenger seat.   All three individuals (Smith, Johnson and the third unknown black male) and three other black males that had previously arrived in Johnson's Chrysler 300 went inside the residence.

At 5:35 p.m., Smith exited the residence, got into the driver's seat of the black Chevy Impala and drove away. At 6:50 p.m., Smith returned to his residence in the Chevy Impala and joined Johnson and the other unknown black males on his porch and front yard areas.

At 7:16 p.m., Johnson and one of the unknown black males drove away in the Chrysler 300. At 9:25 p.m., they returned to the residence and joined the other unknown black males sitting on Smith's front porch.

At 9:29 p.m., Johnson left the residence in his Chrysler 300 but returned at 9:52 p.m. Johnson went inside the residence for approximately two minutes, and then exited the residence and drove away in his Chrysler 300.

43.    Pole camera footage outside of Smith's residence on August 14, 2018,

between the hours of 3:18 p.m. and 9:56 p.m. revealed the following:

At 3:18 p.m., the Buick Enclave was parked in the driveway and his black Chevrolet Impala was parked on the street. At 3:21 p.m., Erwin arrived in his black Jaguar sedan. Erwin exited his Jaguar and went inside the residence.

16

At 3:28 p.m., an unknown male driving Johnson's Chrysler 300 arrived and parked along the north curb in front of the residence. After Johnson exited the front passenger seat of the Chrysler 300, the unknown black male and Johnson walked inside the residence.

At 4:16 p.m., Erwin left Smith's residence in his Jaguar.

At 4:59 p.m., a gray colored Chrysler 300 arrived and parked on the south side of the street in front of the residence. Agents saw that the gray-colored Chrysler 300 had either a temporary plate or out of state license plate. Two unknown black males exited the vehicle and went to the front porch of the residence.

At 5:05 p.m., Erwin returned to the residence in his Jaguar.

At 5:25 p.m., two unknown black males exited Smith's residence and left in the gray colored Chrysler 300.

At 5:52 p.m., a dark gray Chrysler 300 pulled into the driveway of Smith's residence. Johnson's mother, Jennifer Fisher, exited the driver's seat of the vehicle. Johnson exited the residence and walked to the trunk of his vehicle to remove a white and black bag. It appeared to agents that Johnson removed an orange box from the white bag, placed the white bag into Jennifer Fisher's trunk, and then removed a separate black bag from his trunk. At this time, a dark colored Dodge SUV or van arrived and parked along the north curb near Jennifer Fisher's vehicle. Fisher walked away from her vehicle carrying a bag and an orange box (different than the box Johnson possessed) and placed it on the passenger seat of dark colored Dodge van or SUV before it drove away. Once Jennifer Fisher drove away in her vehicle, Johnson went back inside the residence with the large black bag and orange shoe box.

At 6:16 p.m., a silver-colored Ford crew cab truck arrived and parked along the north curb. Johnson exited the residence with the black bag, which contained the orange box, and handed it to the black male who had exited the driver's seat of the truck. The black male returned to the truck and drove away.

At 7:07 p.m., Erwin, Smith, Johnson and a couple of other black males hung out on the front porch. At 7:51 p.m., Johnson left in his Chrysler 300.

17

At 8:03 p.m., a light colored truck arrived and parked along the north curb two houses to the east of the residence. The black male from this light colored truck walked to the other individuals who were on the front porch.

At 8:31 p.m., Smith drove the Buick Enclave out of the driveway and parked it along the north curb of his neighbor's house to the west. A few minutes later, Johnson pulled all the way into the driveway in his Chrysler 300 so far that it was out of sight to law enforcement.    At 8:44 p.m., Johnson left in his Chrysler 300 but returned and parked it in the driveway at 9:02 p.m. Two minutes later, the black male got into his driver's side of the light colored truck and parked behind Johnson's Chrysler 300 in the driveway. Johnson walked from Smith's front porch, got into the passenger seat of the light colored truck and drove away with the black male.

At 9:36 p.m., the light colored truck returned and pulled into the driveway. Johnson got out of the truck and walked back inside the residence. The light colored truck then left.

At 9:38 p.m., Johnson left in his Chrysler 300.    Approximately 15 minutes later, Smith and Erwin drove away together in the Jaguar.

44.    On March 26, 2019, agents conducting surveillance saw Smith arrive at his residence in the Buick Enclave. Smith exited the vehicle and went to the front porch. Approximately seven minutes later, Johnson arrived in his 2013 Chrysler Town and Country van (Illinois registration 265476) and parked on the south side of the street in front of Smith's residence. Johnson exited his van and walked onto the front porch. Approximately one minute later, Johnson left Smith's front porch and returned to the front seat of his Chrysler van. Approximately six minutes later, Cale Chandler arrived in a maroon Chevy pickup truck and parked behind Johnson's vehicle.   Cale Chandler approached Johnson's vehicle and reached into the driver's window to retrieve an item that he placed in his front left pants pocket. Agents saw Johnson's hand reach out of the

driver's window and appeared to be holding U.S. currency, which Cale Chandler retrieved and placed into his front left pants pocket. A short time later, Cale Chandler left Smith's residence in his vehicle.

45.    Approximately five minutes later, a maroon Pontiac Grand Am (Illinois registration 708690) arrived at Smith's residence. After exiting the Pontiac Grand Am, Malcom Cooper, who was carrying a white bag, walked toward Johnson's Chrysler van. Malcom Cooper opened the front passenger door of Johnson's Chrysler van and placed the white bag inside the van. Agents then saw the other passenger in the Pontiac Grand Am, Elijah Muhammad, exit the driver's side of the Pontiac Grand Am and walk towards Johnson to speak with him. Johnson exited his Chrysler van and walked out of sight towards Smith's residence.   Malcom Cooper and Elijah Muhammad returned to their vehicle and left Smith's residence.

### Controlled Buys

46.    On August 2, 2017, CS 2 conducted a controlled buy of ½ ounce of cocaine (15.3 grams) from Smith for $600. Surveillance revealed that Smith and CS 2 first met in the driveway at 1324 E. Sedgwick in Decatur, Illinois, but the actual buy occurred in Smith's vehicle. Following the controlled buy, CS 2 told law enforcement that the Sedgwick property belonged to Guttierrez Cole. CS 2 said that no one lived at the Sedgwick property, but Guttierrez Cole allowed Smith to conduct drug deals there. The controlled buy was evidenced through an eavesdropping device under the authorization

of federal law enforcement and was audio and video recorded. Testing was made by law enforcement on the cocaine, which field tested positive.

47.     On October 20, 2017, CS 2 conducted a controlled buy of ¼ ounce of cocaine from Smith for $300 inside Smith's residence. Erwin was also present inside. The controlled buy was evidenced through an eavesdropping device under the authorization of federal law enforcement and was audio and video recorded.   The cocaine also field tested positive.

### Cellular Phones

48.     Data from one of Johnson's cellular phone numbers revealed more than 80 contacts with Smith's cellular telephone (217-619-4442) from approximately December 7, 2018 to May 23, 2019.   Data from Johnson's previously-used cellular telephone (217-622-8027) also revealed more than 450 contacts with Smith between January 2018 and November 2018.

### Smith's Criminal History

49.     Smith was arrested on July 11, 2019, and charged with two counts of delivery of a controlled substance in Macon County Circuit Court.   Smith's criminal case is still pending.

50.     Smith's criminal history revealed 14 arrests since 2001, including six arrests involving controlled substances and manufacturing/delivery charges and aggravated assault.

51.     Based on the detailed facts above, which support a reasonable belief that the Government will be able to meet its burden of proof at trial, the defendants are subject to forfeiture pursuant 21 U.S.C. § 881(a)(6) because they constitute (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act (21 U.S.C. § 801, *et seq.*); (2) proceeds traceable to such an exchange; (3) moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act; or (4) property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 (money laundering), and are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States of America prays that this Court enter an order forfeiting the defendants to the United States of America for disposition according to law, for the issuance of a warrant *in rem*, for costs of suit, and for such other relief as the Court may deem necessary.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

By:     s/Richard Kim
        Richard Kim, IL Bar No. 6226879
        Assistant United States Attorney
        United States Attorney's Office
        318 South Sixth Street
        Springfield, IL 62701
        Telephone: 217-492-4450
        Email: richard.kim@usdoj.gov

21

VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct based on information and belief.

Executed on this 21st day of May, 2020.

s/Mark T. Hill

_____

Mark T. Hill, Special Agent
Federal Bureau of Investigation

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

❏ 1   U.S. Government
Plaintiff

❏ 3   Federal Question
*(U.S. Government Not a Party)*

❏ 2   U.S. Government
Defendant

❏ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance<br>❏ 120 Marine<br>❏ 130 Miller Act<br>❏ 140 Negotiable Instrument<br>❏ 150 Recovery of Overpayment & Enforcement of Judgment<br>❏ 151 Medicare Act<br>❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>❏ 153 Recovery of Overpayment of Veteran's Benefits<br>❏ 160 Stockholders' Suits<br>❏ 190 Other Contract<br>❏ 195 Contract Product Liability<br>❏ 196 Franchise | **PERSONAL INJURY**<br>❏ 310 Airplane<br>❏ 315 Airplane Product Liability<br>❏ 320 Assault, Libel & Slander<br>❏ 330 Federal Employers' Liability<br>❏ 340 Marine<br>❏ 345 Marine Product Liability<br>❏ 350 Motor Vehicle<br>❏ 355 Motor Vehicle Product Liability<br>❏ 360 Other Personal Injury<br>❏ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>❏ 365 Personal Injury - Product Liability<br>❏ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>❏ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>❏ 370 Other Fraud<br>❏ 371 Truth in Lending<br>❏ 380 Other Personal Property Damage<br>❏ 385 Property Damage Product Liability | ❏ 625 Drug Related Seizure of Property 21 USC 881<br>❏ 690 Other | ❏ 422 Appeal 28 USC 158<br>❏ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>❏ 820 Copyrights<br>❏ 830 Patent<br>❏ 840 Trademark<br><br>**SOCIAL SECURITY**<br>❏ 861 HIA (1395ff)<br>❏ 862 Black Lung (923)<br>❏ 863 DIWC/DIWW (405(g))<br>❏ 864 SSID Title XVI<br>❏ 865 RSI (405(g)) | ❏ 375 False Claims Act<br>❏ 400 State Reapportionment<br>❏ 410 Antitrust<br>❏ 430 Banks and Banking<br>❏ 450 Commerce<br>❏ 460 Deportation<br>❏ 470 Racketeer Influenced and Corrupt Organizations<br>❏ 480 Consumer Credit<br>❏ 490 Cable/Sat TV<br>❏ 850 Securities/Commodities/ Exchange<br>❏ 890 Other Statutory Actions<br>❏ 891 Agricultural Acts<br>❏ 893 Environmental Matters<br>❏ 895 Freedom of Information Act<br>❏ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **FEDERAL TAX SUITS** | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 210 Land Condemnation<br>❏ 220 Foreclosure<br>❏ 230 Rent Lease & Ejectment<br>❏ 240 Torts to Land<br>❏ 245 Tort Product Liability<br>❏ 290 All Other Real Property | ❏ 440 Other Civil Rights<br>❏ 441 Voting<br>❏ 442 Employment<br>❏ 443 Housing/ Accommodations<br>❏ 445 Amer. w/Disabilities - Employment<br>❏ 446 Amer. w/Disabilities - Other<br>❏ 448 Education | **Habeas Corpus:**<br>❏ 463 Alien Detainee<br>❏ 510 Motions to Vacate Sentence<br>❏ 530 General<br>❏ 535 Death Penalty<br>**Other:**<br>❏ 540 Mandamus & Other<br>❏ 550 Civil Rights<br>❏ 555 Prison Condition<br>❏ 560 Civil Detainee - Conditions of Confinement | ❏ 710 Fair Labor Standards Act<br>❏ 720 Labor/Management Relations<br>❏ 740 Railway Labor Act<br>❏ 751 Family and Medical Leave Act<br>❏ 790 Other Labor Litigation<br>❏ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>❏ 462 Naturalization Application<br>❏ 465 Other Immigration Actions | ❏ 870 Taxes (U.S. Plaintiff or Defendant)<br>❏ 871 IRS—Third Party 26 USC 7609 | ❏ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

❏ 1   Original Proceeding
❏ 2   Removed from State Court
❏ 3   Remanded from Appellate Court
❏ 4   Reinstated or Reopened
❏ 5   Transferred from Another District *(specify)*
❏ 6   Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

❏   CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ❏ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**    **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**    **Origin.**  Place an "X" in one of the six boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

E-FILED
Tuesday, 26 May, 2020  10:57:58 AM
Clerk, U.S. District Court, ILCD

## THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No: | 20-2142 |
| | ) | | |
| $60,585.00 IN U.S. CURRENCY, $6,308.54 | ) | | |
| IN U.S. CURRENCY, FORGIATO RIMS and | ) | | |
| TIRES, and MISCELLANEOUS JEWELRY, | ) | | |
| | ) | | |
| Defendants. | ) | | |

### WARRANT OF ARREST IN REM

TO:    United States Marshal Service

WHEREAS, on May 26, 2020, a verified Complaint has been filed in this Court praying that process issue for the arrest of property that is the subject of this action. NOW, THEREFORE, we do hereby command that you seize the following property and detain the same in your custody until further order of the Court regarding the same, which is more fully described as:

$60,585.00 in U.S. Currency
$6,308.54 in U.S. Currency
Forgiato Rims and Tires
Miscellaneous Jewelry

All persons claiming an interest in said property must file their verified claims, pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, within thirty (30) days after the execution of the warrant or actual notice of this action, whichever occurs first, and must serve and file an answer within twenty (20) days after the filing of the claim with the Office of the Clerk, United States District Court, 201 South Vine, Room 217, Urbana, Illinois 61801 (telephone: (217) 373-5830), and copies of all claims and answers must be provided to Assistant United States Attorney Richard Kim, 318 S. Sixth, Springfield, Illinois 62701; (telephone: (217) 492-4450).

Additional procedures and regulations regarding this forfeiture action are found at 19 U.S.C. §§1602-1619, and Title 21 C.F.R. §§1316.71-1316.81.   All persons and entities who have an interest in the defendant property may, in addition to filing a

claim or in lieu of the filing of a claim, submit a Petition for Remission or Mitigation of the forfeiture for a non-judicial determination of this action pursuant to 28 C.F.R. Part 9.

Dated this _____ day of _____, 2020.

_____, Clerk

By: _____
Deputy Clerk

**U.S. Department of Justice**

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| UNITED STATES OF AMERICA | 20-2142 |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| $60,585.00 in U.S. Currency, et al. | In Rem |

**SERVE ► AT**

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

$60,585.00 in U.S. Currency

ADDRESS (*Street or RFD, Apartment No., City, State, and ZIP Code*)

SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW:

| | |
|---|---|
| **Richard Kim, Assistant United States Attorney**<br>**U.S. Attorney's Office**<br>**318 S. Sixth Street**<br>**Springfield, IL 62701** | Number of process to be served with this Form - 285 |
| | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (*Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service*)

CATS:  19-FBI-006144

| Signature of Attorney or other Originator requesting service on behalf of :<br>**s/Richard Kim**<br>☒ PLAINTIFF<br>☐ DEFENDANT | TELEPHONE NUMBER<br>**217-492-4450** | DATE<br>May 26, 2020 |
|---|---|---|

## SPACE BELOW FOR USE OF U.S. ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. | Total Process<br>No._____ | District of Origin<br>No._____ | District to Serve<br>No._____ | Signature of Authorized US Deputy or Clerk | Date |
|---|---|---|---|---|---|

I  hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and  return that I am unable to locate the individual, company, corporation, etc., named above *(See remarks below).*

| Name and title of individual served *(If not shown above).* | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|
| Address (*complete only if different than shown above*) | Date of Service / Time / am pm |
| | Signature of U.S. Deputy or Clerk |

| Service Fee | Total Mileage Charges<br>*(including endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|

REMARKS:

PRIOR EDITIONS MAY
BE USED

**U.S. Department of Justice**

**PROCESS RECEIPT AND RETURN**

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| UNITED STATES OF AMERICA | 20-2142 |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| $60,585.00 in U.S. Currency, et al. | In Rem |

**SERVE ► AT**

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

$6,308.54 in U.S. Currency

ADDRESS (*Street or RFD, Apartment No., City, State, and ZIP Code*)

SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW:

Richard Kim, Assistant United States Attorney
U.S. Attorney's Office
318 S. Sixth Street
Springfield, IL 62701

Number of process to be served with this Form - 285

Number of parties to be served in this case

Check for service on U.S.A.

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (*Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service*)

CATS:  19-FBI-006047

| Signature of Attorney or other Originator requesting service on behalf of : | | TELEPHONE NUMBER | DATE |
|---|---|---|---|
| s/Richard Kim | ☒ PLAINTIFF ☐ DEFENDANT | 217-492-4450 | May 26, 2020 |

## SPACE BELOW FOR USE OF U.S. ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated. | Total Process | District of Origin | District to Serve | Signature of Authorized US Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | No. | No. | No. | | |

I  hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and  return that I am unable to locate the individual, company, corporation, etc., named above *(See remarks below)*.

| Name and title of individual served (*If not shown above*). | | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|---|
| Address (*complete only if different than shown above*) | | Date of Service / Time / am pm |
| | | Signature of U.S. Deputy or Clerk |

| Service Fee | Total Mileage Charges (*including endeavors*) | Forwarding Fee | Total Charges | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|
| | | | | | | |

REMARKS:

PRIOR EDITIONS MAY
BE USED

**U.S. Department of Justice**

**PROCESS RECEIPT AND RETURN** E-FILED

Tuesday, 26 May, 2020  10:57:58 AM
Clerk, U.S. District Court, ILCD

| PLAINTIFF<br>UNITED STATES OF AMERICA | COURT CASE NUMBER<br>20-2142 |
|---|---|
| DEFENDANT<br>$60,585.00 in U.S. Currency, et al. | TYPE OF PROCESS<br>In Rem |

| **SERVE**<br>▶<br>**AT** | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN<br><br>Forgiato Rims and Tires |
|---|---|
| | ADDRESS (Street or RFD, Apartment No., City, State, and ZIP Code) |

| SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW: | |
|---|---|
| | Number of process to be served<br>with this Form - 285 |
| **Richard Kim, Assistant United States Attorney**<br>**U.S. Attorney's Office**<br>**318 S. Sixth Street**<br>**Springfield, IL 62701** | Number of parties to be served<br>in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service)

CATS:  19-FBI-006546

| Signature of Attorney or other Originator requesting service on behalf of :<br>**s/Richard Kim**<br>_____   ☒ PLAINTIFF<br>☐ DEFENDANT | TELEPHONE NUMBER<br><br>**217-492-4450** | DATE<br><br>May 26, 2020 |
|---|---|---|

### SPACE BELOW FOR USE OF U.S. ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total<br>number of process indicated. | Total Process<br><br>No._____ | District of Origin<br><br>No._____ | District to Serve<br><br>No._____ | Signature of Authorized US Deputy or Clerk<br><br>_____ | Date |
|---|---|---|---|---|---|

I  hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and  return that I am unable to locate the individual, company, corporation, etc., named above *(See remarks below).*

| Name and title of individual served *(If not shown above).* | | ☐ A person of suitable age and discretion then residing<br>in the defendant's usual place of abode. | |
|---|---|---|---|
| Address (complete only if different than shown above) | | Date of Service | Time                    am<br><br>                               pm |
| | | Signature of U.S. Deputy or Clerk | |

| Service Fee | Total Mileage Charges<br>*(including endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|

REMARKS:

PRIOR EDITIONS MAY
BE USED

**U.S. Department of Justice**

**PROCESS RECEIPT AND RETURN**

E-FILED
Tuesday, 26 May, 2020  10:57:59 AM
Clerk, U.S. District Court, ILCD

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| UNITED STATES OF AMERICA | 20-2142 |

| DEFENDANT | TYPE OF PROCESS |
|---|---|
| $60,585.00 in U.S. Currency, et al. | In Rem |

**SERVE ▶ AT**

NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN

Miscellaneous Jewelry

ADDRESS (*Street or RFD, Apartment No., City, State, and ZIP Code*)

SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW:

**Richard Kim, Assistant United States Attorney**
**U.S. Attorney's Office**
**318 S. Sixth Street**
**Springfield, IL 62701**

Number of process to be served with this Form - 285

Number of parties to be served in this case

Check for service on U.S.A.

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (*Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service*)

CATS:  19-FBI-006307

| Signature of Attorney or other Originator requesting service on behalf of : | | TELEPHONE NUMBER | DATE |
|---|---|---|---|
| s/Richard Kim | ☒ PLAINTIFF ☐ DEFENDANT | 217-492-4450 | May 26, 2020 |

**SPACE BELOW FOR USE OF U.S. ONLY - DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. | Total Process | District of Origin | District to Serve | Signature of Authorized US Deputy or Clerk | Date |
|---|---|---|---|---|---|
| | No._____ | No._____ | No._____ | | |

I  hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and  return that I am unable to locate the individual, company, corporation, etc., named above *(See remarks below)*.

| Name and title of individual served *(If not shown above)*. | | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. | |
|---|---|---|---|
| Address (*complete only if different than shown above*) | | Date of Service | Time          am          pm |
| | | Signature of U.S. Deputy or Clerk | |

| Service Fee | Total Mileage Charges *(including endeavors)* | Forwarding Fee | Total Charges | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|
| | | | | | | |

REMARKS:

PRIOR EDITIONS MAY
BE USED